IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:19-CV-37-FL

| | | |
|---|---|---|
| JEREMY D. PHELPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings. (DE 23, 29). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court rejects the M&R, grants plaintiff's motion, denies defendant's motion, and remands this case to defendant for further proceedings.

**BACKGROUND**

On June 8, 2015, plaintiff protectively filed a Title II application a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income. Plaintiff initially alleged disability beginning December 31, 2009, but later amended his alleged disability onset date to August 11, 2015. Plaintiffs' applications were denied both initially and upon reconsideration. Later, plaintiff filed a request for a hearing before an administrative law

judge ("ALJ"), who, after a September 26, 2017, hearing, denied plaintiff's claims by order entered December 26, 2017. Following the ALJ's denial of his applications, plaintiff timely filed a request for review with the Appeals Council. On January 11, 2019, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as defendant's final decision. Plaintiff then filed complaint in this court seeking judicial review.

## COURT'S DISCUSSION

A.   Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 190 (4th

Cir. 2016) (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings. . .and to submit. . .proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

3

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 11, 2015. (Transcript of the Record ("Tr.") 19). At step two, the ALJ found that plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"), cannabis use disorder, alcohol use disorder. (Tr. 19). At step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations. (Tr. 20).

Before proceeding to step four, the ALJ determined plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but plaintiff "is limited to only brief incidental contact with the general public. Additionally, the claimant is limited to no more than occasional decision making or changes in the work setting." (Tr. 21).

At step four, the ALJ concluded plaintiff was unable to perform any past relevant work. (Tr. 28). At step five, the ALJ determined jobs exist in the national economy that plaintiff can perform. (Tr. 28). Thus, the ALJ concluded plaintiff was not disabled under the terms of the Social Security Act. (Tr. 29).

B.  Analysis

Plaintiff objects that the ALJ erred by giving limited weight to the medical opinions of Dr. Richard Carlson, plaintiff's treating psychiatrist, and Dr. Robert Garfield, plaintiff's prior treating physician.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). The ALJ must weigh "the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). An ALJ must "evaluate every medical opinion we receive," regardless of its source. 20 C.F.R. § 404.1527(c). An opinion as to an issue reserved to the Commissioner, such as a statement that plaintiff is "disabled" or "unable to work," are not medical opinions given any special significance. 20 C.F.R. § 404.1527(d)(1), (3).

Where, as here, plaintiff's claims were filed before March 27, 2017, the court applies the "treating physicians rule" to determine how much weight to assign to medical opinions given by sources that provided plaintiff with treatment or had an ongoing treatment relationship with plaintiff. Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 255–56 (4th Cir. 2017) (citing 20 C.F.R. § 1527). "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

Where an opinion is not given controlling weight, the ALJ is responsible for assessing the weight of a medical opinion based on several factors. See 20 C.F.R. § 404.1527(c). Those factors include: 1) whether the physician has examined the applicant; 2) the treatment relationship between the physician and the applicant; 3) the supportability of the physician's opinion, 4) the consistency of the opinion with the record; 5) whether the physician is a specialist; and 6) other factors brought to defendant's attention, such as the amount of understanding of defendant's disability programs and their evidentiary requirements, and the physician's familiarity with other information in the record. See id. § 404.1527(c); Johnson, 434 F.3d at 654.

"An ALJ must include a narrative discussion describing how the evidence supports his explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations." Woods v. Berryhill, 888 F.3d 686, 695 (4th Cir. 2018) (internal quotation marks and citation omitted). An ALJ has an obligation to avoid improperly "playing doctor" by mischaracterizing plaintiff's treatment as "conservative." Lewis v. Berryhill, 858 F.3d 858, 868–69 (4th Cir. 2017).

On January 24, 2017, and June 13, 2017, Carlson listed plaintiff's medications and opined that "due to his medical/psychiatric condition of PTSD, he is unable to work or hold a job." (Tr. 395, 398). The ALJ did not err in refusing to give these two opinions any weight, as plaintiff's ability to hold a job is an issue reserved for the Commissioner. See 20 C.F.R. § 404.1527(d)(1), (3).

On July 11, 2017, Carlson gave a third opinion, providing a function by function assessment. (Tr. 400). Carlson opined that plaintiff had extreme limitations in social functioning, where he was almost never able to leave the house alone, then only for brief periods. (Id.). Carlson opined that plaintiff's concentration, pace, and persistence was extremely limited due to panic and

6

nightmares. (Id.). Carlson opined that plaintiff was extremely limited in functioning on his own, and can not pay bills, even though he could manage a bank account. (Id.). Finally, Carlson opined that plaintiff was extremely limited as to periods of decompensation, often decompensating in social situations. (Id.). Carlson opined that "medications help but still has severe limitations." (Id.). That same day, Carlson prescribed plaintiff a service dog. (Tr. 401).

The ALJ discounted Carlson's July 11, 2017, opinion for two reasons. First, the ALJ reasoned that Carlson noted "that medications helped the claimant with his severe limitations." (Tr. 25). This is a mischaracterization of Carlson's opinion. Carlson stated that "medications help but still has severe limitations," not that "medications help with severe limitations." (Tr. 25, 400). Thus, the ALJ's interpretation of Carlson's opinion is not supported by substantial evidence.

Second, the ALJ relies upon "conflicting treatment notes from Coastal Horizons" to conclude that "claimant improved significantly with treatment." (Tr. 25). The ALJ specifically cites to portions of plaintiff's treatment notes from February 28, 2017, and March 17, 2017, indicating that Buspar, one of plaintiff's anxiety medications, helps "greatly." (Tr. 25, 430–32).

Substantial evidence does not support the ALJ's position that Carlson's opinion was inconsistent with his treatment notes. On January 20, 2017, plaintiff reported to Carlson that he was having trouble sleeping and had nightmares. (Tr. 436). Plaintiff also reported staying away from people and some memory loss. (Id.). On February 13, 2017, plaintiff had severe panic attacks requiring an EMS be called. (Tr. 434). As noted by the ALJ, plaintiff reported a better mood and improvement in anxiety and panic from use of Buspar on February 28, 2017, and March 17, 2017. (Tr. 430–32). However, on April 18, 2017, plaintiff reported feeling withdrawn on many days, his sleep was a bit of a problem, and plaintiff suffered stressors including recently learning his mother

7

had cancer.[1]  (Tr. 428).  On July 11, 2017, plaintiff reported decreased sleep and increased anxiety. (Tr. 424).

The court does not see any conflict between Carlson's July 11, 2017, opinion and his treatment notes.  Carlson accounted for the fact that medications helped plaintiff in his medical opinion regarding plaintiff's limitations.  (Tr. 400).  Treatment notes subsequent to plaintiff's February 28, 2017, and March 17, 2017, support Carlson's July 11, 2017, opinion that plaintiff's symptoms were still severe.  (Tr. 424, 428).  Plaintiff required additional treatment, including increased medication and a therapy dog, even after noting improvement in his symptoms.  (Tr. 401, 426, 429, 431).

Furthermore, Carlson's opinion is consistent with Garfield, another treating physician.  On June 8, 2016, Garfield previously opined that plaintiff's ability to work "would be limited by his problems concentrating, his problems getting along with people and following simple instructions, his problems maintaining acceptable standards of hygiene, and his social phobia." (Tr. 410).  Like Carlson, the ALJ discounted Garfield's opinion on the basis that plaintiff's symptoms are "well controlled with prescription medications."  (Tr. 24–25 (citing Tr. 410–16)).  The portions of the record cited by the ALJ identify the medications prescribed by Garfield and include one statement to Garfield that plaintiff "gives very good reviews" to tramadol for pain relief and Ambien for insomnia.  (Tr. 410–16).  The ALJ's assertion that Garfield opined plaintiff's symptoms were "well-controlled" by the medication prescribed is not supported the treatment notes cited and thus amounts to the ALJ improperly playing doctor.  Lewis, 858 F.3d at 868–69.  Accordingly, remand is required for defendant to properly weigh Carlson's and Garfield's medical opinions.

---

[1] Plaintiff also reported to Carlson that his father had leukemia, though it is unclear when he learned of this. (Tr. 428).

## CONCLUSION

Based on the foregoing, the court REJECTS the M&R. Plaintiff's motion for judgment on the pleadings is GRANTED (DE 23) and defendant's motion for the same (DE 29) is DENIED. This case is REMANDED to defendant pursuant to sentence four of § 405(g). The clerk of court is DIRECTED to close this case.

SO ORDERED this 24th day of March, 2020.

LOUISE W. FLANAGAN
United States District Judge